UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAMONT SMITH,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS,<br><br>　　　　　　Defendants. | Case No. 20 C 1381<br><br>Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Compel Defendants to Produce Rule 30(b)(6) Designees [72]. For the reasons set forth below, Plaintiff's Motion to Compel [72] is granted as to Topics 2(a)-(c) and 3, denied as to Topics 2(d) and 7, and denied as moot as to Topic 1.

**BACKGROUND**

On February 26, 2020, Plaintiff Lamont Smith, a detainee at Cook County Jail, filed this lawsuit against Defendant Thomas Dart, the Sheriff of Cook County, and Cook County, Illinois, alleging Defendants have violated his rights under Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132. Smith suffers from sleep apnea, which substantially limits his ability to engage in the program or activity of sleeping. Doc. 1, Cmplt. ¶ 5. Smith requires a CPAP machine and access to an electrical outlet to power the device. *Id*. ¶ 6. Smith's initial complaint alleged that since February 6, 2020, he has not been able to use a CPAP machine during the day because electricity is not offered to power the CPAP device. *Id*. ¶ 7. When Smith sleeps without the use of a CPAP machine, he experience shortness of breath. *Id*. ¶ 8. In his Supplement to Complaint, Smith alleges that after filing his original complaint, his CPAP machine was taken away by

employees at the Cook County Department of Corrections ("CCDOC"). Doc. 17, Supp. to Cmplt. ¶ 1.

In their Response to Smith's motion, Defendants state that the electrical outlets that CPAP machines are plugged into pose a security risk, and the outlets were placed on timers so they are not live during the day when detainees can tamper with the outlets. Doc. 77, at 1. Defendants also explain that CPAP machine use was temporarily discontinued in March 2020, at the start of the coronavirus pandemic, because CPAP machines are aerosol generating procedures that increase transmission risk for respiratory pathogens, including the coronavirus. *Id*. at 2.

## DISCUSSION

On October 28, 2021, Smith served a Rule 30(b)(6) Notice of Deposition which identified eight topics. Doc. 72-3. Smith now moves to compel Defendants to produce Rule 30(b)(6) designees regarding Topics 1, 2, 3, and 7 of his Rule 30(b)(6) Notice. Federal Rule of Civil Procedure 30(b)(6) governs deposition notices directed to an organization. Rule 30(b)(6) allows a party to issue a deposition notice "nam[ing] as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The named organization must then "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id*. The organization must prepare its designated individuals to "testify about information known or reasonably available to the organization." *Id*. "The scope of Rule 30(b)(6) is limited by Rule 26 which permits 'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]'" *Putco, Inc. v. Carjamz Com Inc.*, 2021 WL 492902, at *1 (N.D. Ill. Feb. 10, 2021). Proportionality is evaluated in terms of "the importance of the issues at stake in

2

the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Regarding Topic 1, Defendants' Response states that it has agreed to designate a County witness to testify to Topic 1 as modified by Smith at the November 15, 2021 meet and confer session. Specifically, as to Cook County, Topic 1 is modified as follows: "If Cermak was informed that the CPAP was a safety or security risk, explain why Cermak consented to the placement of CPAP machines on timers." *See* Doc. 72 at 3, ¶ 9; doc. 77 at 3, ¶ 13. Based on the parties' agreement, Plaintiff's motion is denied as moot as to Topic 1. The Court addresses each remaining disputed topic in turn below.

**A.     Topic 2: For inmates assigned to RTU, Tier 3G, in February 2020 and prescribed a C-PAP: (a) the location of the beds designated for inmates prescribed a CPAP; (b) the location of the outlets designated for inmates prescribed a CPAP; (c) the location of the Officer's Desk in proximity to the outlets designated for CPAP machines; and (d) the policy and procedure for a correctional officer assigned to the tier to provide supervision, including ensuring safety and security of detainees. This topic includes providing supervision for the power outlets designated for the CPAP machine.**

Topics 2(a)-(c) seek information regarding the location of the CPAP beds, CPAP outlets, and the Officer's Desk. As Smith explains in his motion, Defendants contend that the electrical outlets the CPAP machines use pose a safety and security risk. During discovery, Defendants produced emails from CCDOC leadership in February 2017 regarding placement of receptacles for CPAP machines. Doc. 72-6. The Executive Director of CCDOC stated placement of the outlets in the tier "close to the Officer's desk is preferred." *Id*. The Assistant Director of CCDOC stated that the "units in RTU are direct supervision so the outlets can be monitored." *Id*. He added: "this is our safest and best option to address these CPAP concerns." *Id*.

3

As to Topics 2(a)-(c), Defendants object that "Rule 30(b)(6) testimony is not suitable for understanding the location of an object" because any such testimony would "inevitably lead to confusion and unusable testimony." Doc. 77, at 3. According to Defendants, "[d]escribing the location of an object without any known points of reference by the listener (the court or the jury) would not assist the listener in understanding where that object is located. Describing the location of objects coherently through spoken language is simply too difficult a task." *Id*.

Defendants' objection is misplaced. After all, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The location of the beds, outlets, and Officer's Desk in RTU, Tier 3G is relevant to Defendants' defense that the electrical outlets used by the CPAP machines pose a safety and security risk during the day. Smith is entitled to learn how the beds, outlets, and desks are located in RTU, Tier 3G and why Defendants believe the location of the beds, outlets, and desks in RTU best addresses the CPAP outlet safety concerns. Moreover, the Court does not understand and Defendants do not adequately explain why the testimony of a designee on the locations of CPAP beds, CPAP outlets, and the Officer's Desk in Tier 3F will be confusing and unusable. To avoid potential confusion by the witness, Smith's counsel reasonably suggested that the witness could use a photograph or still image from a video as a visual aid for this testimony. Defendants do not address Smith's suggestion. Although Defendants are not required to use a visual aid for this testimony, they may do so. In any event, any designated witness shall be prepared to testify about "information known or reasonably available" regarding Topics 2(a)-(c).

Topic 2(d) seeks testimony regarding the policy and procedure for a correctional officer to supervise detainees in Tier 3G, "including ensuring safety and security of detainees . . . [and] providing supervision for the power outlets designated for the CPAP machine." In his motion,

Smith explains that he seeks this information because Defendants have produced incident reports suggesting that inmates have used the outlets for illegitimate purposes, which was a factor in restricting power during the daytime. Doc. 72-7. Defendants argue that Topic 2(d) is overbroad and not specified with reasonable particularity. Defendants contend that they would need to investigate and prepare a witness to testify regarding irrelevant policies and procedures related to supervising detainees during mealtimes, medical transport, recreation time, visitation, phone calls, and any other of the many activities that take place on a tier. Defendants agree to designate a witness to testify to the policies and procedures for a correctional officer assigned to the tier to provide supervision for the power outlets designated for the CPAP machines.

"Rule 30(b)(6) requires that the topics for the deposition be specified with 'reasonable particularity.'" *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000). Courts have "frowned on 30(b)(6) notices that describe the topics with the term 'including but not limited to.'" *Centurylink Communications LLC v. Peerless Network, Inc.*, 2020 WL 11647818, at *1 (N.D. Ill. Jan. 28, 2020). The Court finds that seeking testimony on all "polic[ies] and procedure[s] for a correctional officer assigned to the tier to provide supervision, including ensuring safety and security of detainees . . . [and] providing supervision for the power outlets designated for the CPAP machine" is substantively overbroad because it includes information related to policies and procedures for supervising detainees in Tier 3G unrelated to outlets used for CPAP machines. As noticed, Topic 2(d) would require Defendants to prepare the designee to testify to *any* supervision policy or procedure for a correctional officer assigned to the tier. Accordingly, the Court denies the motion as to Topic 2(d) as noticed. Topic 2(d) will be narrowed to testimony on the policy and procedure for correctional officers assigned to Tier 3G in February 2020 to provide supervision for the power outlets designated for the CPAP machines. *Centurylink*, 2020 WL

11647181, at *1 ("Courts have limited or narrowed Rule 30(b)(6) topics that were found not to describe the matters for examination with reasonable particularity."). Defendants do not object to designating a witness on this specific topic. Doc. 77 at 4, ¶ 24. This narrowed Topic 2(d) will include Smith's request for information about supervision of inmates using outlets for the CPAP machines for improper purposes, as described in his motion.

Accordingly, Smith's motion to compel is granted as to Topics 2(a)-(c) and denied as to Topic 2(d).

**B.     Topic 3: From April 29, 2015 to the present, action taken to: (a) provide secure enclosures for the CPAP machine for detainees at Cook County Jail; (b) provide battery powered CPAP machines to detainees at the Cook County Jail; (c) allow inmates to use battery powered CPAP machines at Cook County Jail; and (d) provide secure enclosures for the electrical outlets used to power CPAP machines.**

Defendants argue that the temporal scope of Topic 3, namely 2015 to the present, is not sufficiently limited. The April 29, 2015 date is based on an April 29, 2015 Cook County Board Agenda item "to secure enclosures for battery operated CPAP machines." Doc. 72-8. In a related case, *Green v. Dart*, 20 C 1469 (N.D. Ill), Judge Rowland granted the plaintiff's motion to compel Defendants to produce documents with respect to this April 29, 2015 Cook County Board Agenda item. Doc. 72-9.

Defendants assert that the more than six-year period from 2015 to the present is overbroad and not proportional to the needs of the case given the claims Smith is asserting in this case. Defendants point out that Smith alleges he entered Cook County Jail on November 20, 2018. Doc. 1, Cmplt. ¶ 2. Additionally, Defendants argue that the facts giving rise to Smith's claim occurred in February 2020 as he alleges only that "[s]ince February 6, 2020," he has not been able to use the CPAP machine during the day to take naps. *Id*. ¶ 7. Defendants argue that testimony on secure enclosures and battery powered CPAP machines during a time Smith was not even at the Cook

County Jail (2015 to most of 2018) and during the time Smith had no issue with a CPAP machine (late 2018 to early 2020) is not relevant to the claims in this case. Defendants propose that February 6, 2020 be used as the starting point for Topic 3. In addition, Defendants claim that designating a witness to testify to matters related to battery powered CPAP machines from April 29, 2015 to the present is not proportional to the needs of the case because they have been unable to locate any documents related to the April 29, 2015 Cook County Board Agenda item regarding providing new secure enclosures for battery operated CPAP machines. As a result, Defendants claim that it is "impossible for [them] to conduct an adequate investigation into this topic." Doc. 77 at 6.

The Court finds that the time frame proposed by Defendants is too narrow and prevents Smith from obtaining potentially relevant information as to the feasibility of providing a battery powered CPAP machine as an accommodation. *First*, as noted above, the District Judge has already determined that the April 29, 2015 time frame is relevant on this issue by ordering production of documents regarding the April 29, 2015 Cook County Board Agenda item. The Court agrees with this finding. The feasibility of using battery-powered CPAP devices during the daytime is relevant to Smith's claim that Defendants failed to provide him with a reasonable accommodation. However, information that is relevant to Smith's failure to accommodate claim and proportional to the needs of the case is not necessarily limited to the period after Smith entered Cook County Jail or the time period after which he has been unable to use the CPAP during the day. Discovery to date indicates that Defendants' consideration of providing battery operated CPAP machines was not limited to the time period after February 6, 2020, when Smith was denied use of a CPAP machine during the day. As noted above, there is evidence that in April 2015, the Cook County Board considered a proposal to "[p]rovide new secure enclosures for battery operated

7

CPAP machines." Doc. 72-8. Furthermore, there is evidence that in May 2020, Defendants continued to consider battery powered CPAP machines because Dr. Connie Mennella, the Chair of the Department of Correctional Health, wrote in an email: "will need to discuss with DOC regarding bed space and outlets v battery." Doc. 72-11. Thus, information regarding Defendants' efforts to provide battery powered CPAP machines from April 29, 2015 to the present could shed light on whether such an accommodation was reasonable beginning on February 6, 2020.

*Second*, the fact that Defendants have been unable to locate any documents related to secure enclosures for battery operated CPAP machines does not make the request irrelevant. In fact, witness testimony regarding the April 29, 2015 Cook County Board Agenda item is all the more necessary given that the information is not "unreasonably cumulative or duplicative," cannot "be obtained from some other source that is more convenient, less burdensome, or less expensive," and Smith has not had "ample opportunity to obtain the information by discovery in the action." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). Smith is entitled to understand the County's efforts to facilitate battery operated CPAP service from April 29, 2015 to the present because that information may be relevant to Smith's claim arising from a February 6, 2020 failure to accommodate.

*Finally*, the Court is not convinced that designating a deponent with knowledge relevant to Topic 3 is impossible, notwithstanding Defendants' inability to locate any documents related to the April 29, 2015 Cook County Board Agenda item. In addition to reviewing documents to prepare for a Rule 30(b)(d) deposition, the witness can speak to knowledgeable employees or other persons associated with the organization to obtain the knowledge necessary to testify as a 30(b)(6) deponent. The duty to prepare a Rule 30(b)(6) designee is not limited to document review. Rather, "[t]he designee must be prepared to the extent that matters are reasonably available, whether from

8

documents, present or past employees, or other sources." *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005); *Brazos River Auth. V. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). Rule 30(b)(6) "requires a good faith effort on the part of the designate to find out relevant facts—to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories." *Wilson*, 226 F.R.D. at 528-29. Accordingly, Defendants have a duty to prepare a designee to testify to the extent information is reasonably available from documents, employees, past employees, or other sources.

For these reasons, Smith's motion to compel is granted as to Topic 3.

**C.    Topic 7: From May 20, 2020 to March 24, 2021, the records identifying the isolation tier and quarantine tiers at the Cook County Jail. Topics for examination include: (a) daily e-mails generated from the Sheriff identifying this information; (b) daily e-mails generated from the County identifying this information; (c) Chief of Staff Brad Curry wrote an Inter-Departmental Memorandum dated April 1, 2020 explaining, "Beginning tomorrow, April 2, an email will be distributed to all staff at 7am everyday identifying every tier designed as an Isolation Tier and a Quarantine Tier on the compound." The time period when the Sheriff's Office distributed an e-mail to all staff and why the Sheriff's Office stopped distributing this email.**

Smith's Topic 7 stems from two documents produced by Defendants. The first document is an April 1, 2020 inter-departmental memorandum from Brad Curry, the Chief of Staff for the Sheriff, to all CCDOC staff, stating in part that "[b]eginning tomorrow, April 2, an email will be distributed to all staff at 7 am everyday identifying every tier designated as an isolation Tier and a Quarantine Tier on the compound." Doc. 72-12. The second document is an email sent by Dr. Connie Mennella on May 20, 2020 regarding resuming CPAP service at the Cook County Jail, which states in part: "all CPAP in single cells moving forward. Reserve Isolation Cells for CPAP and COVID+ - will need to discuss with DOC regarding bed space and outlets v. battery." Doc. 72-11.

On September 15, 2021, Smith filed a motion to compel seeking an order requiring the Sheriff to produce the daily e-mails that identify the COVID isolation and quarantine tiers from April 2, 2020 to April 1, 2021. Doc. 59. The district court ordered the Sheriff to produce only the emails from the month of February 2021. Doc. 66, at 12:4-18. On October 28, 2021, defense counsel informed Smith's counsel that there are no emails from February 2021 that show the COVID quarantine and isolation tiers. Doc. 72, at 9, ¶ 26.

In his motion, Smith says his Rule 30(b)(6) Topic 7 seeks to understand the records maintained by Defendants regarding isolation and quarantine tiers. Smith contends that during a hearing on his prior motion to compel, Judge Rowland stated that "this type of information may be relevant to identify whether there were cells during this time period to place CPAP users." Doc. 72 at 9, ¶ 25. Having reviewed the transcript of the October 4, 2021 hearing before Judge Rowland, the Court does not read the transcript in the manner Smith suggests. At the hearing, Smith's counsel told Judge Rowland that Dr. Mennella's email states that the single cell tiers were used for CPAP users and not just for COVID isolation and quarantine tiers. Doc. 66, at 9:17-20. Judge Rowland respond, "that seems relevant to me." *Id*. at 9:21. She continued:

> Now, I don't know that you need all these e-mails for that or that it's - - but that question: Where - - you know, what was available for Mr. Smith? Where could you have put him all this time? What cells were available? You know, why wasn't he put into one of these cells so that he could use a CPAP machine? That seems completely reasonable to me."

*Id*. at 9:22-10:5. When Smith's counsel stated that the "e-mails would show whether there were single-cell facilities, locations of the Cook County Jail, that were available during this time that they could have put the CPAP users in so they could resume service," Judge Rowland responded: "I don't know about that." *Id*. at 5: 9-13. Smith's current motion does not argue that CPAP users could have been placed in single cells in the COVID quarantine and isolation tiers. Judge Rowland

10

stated that whether there were available places at the Cook County Jail where Mr. Smith could have been moved "doesn't really matter" to the emails that identify the COVID isolation and quarantine tiers. *Id*. at 8:18-9:2. Smith's counsel confirmed at the prior hearing that he was seeking information regarding the following question, which Judge Rowland found relevant: "beginning in April 2020, instead of taking the CPAP machines away, what locations could you have given them." *Id*. at 10:10-23. Judge Rowland was not convinced, however, that the emails identifying the designation of COVID isolation and quarantine tiers was relevant to the question of whether single cell tiers were available for CPAP users. *Id*. at 11:2-19. Thus, Judge Rowland allowed Smith to discover only one month of the COVID isolation and quarantine tier emails.

The information Judge Rowland found relevant and Smith confirmed he is seeking is covered by Topic 6 of Smith's Rule 30(b)(6) notice, which states:

> From May 20, 2020 to March 24, 2021, describe steps to place C-PAP users in single cells. Topics for examination include:
>
> i. The tier (or tiers) of single cells that were considered during this time to house CPAP users.
>
> ii. The communication between the DOC and Cermak regarding "bed space and outlets v. battery" including the individuals who participated in these discussions and documents exchanged.
>
> iii. The "public health officials," as referenced in Dr. Mennella's email, who told officials from Cook County Jail it was safe to resume CPAP, including the documents provided explaining this recommendation.
>
> iv. Why Tier 2E was found to be a suitable location for CPAP users by March 24, 2021, including why it was not used to house CPAP users from June 1, 2020 to March 1, 2021.

Doc. 72-3 at 5-6. Defendants have agreed to provide Smith with the information listed in Topic 6 at the Rule 30(b)(6) deposition. Because Judge Rowland did not find the designation of tiers as COVID isolation and quarantine tiers relevant to Smith's claim regarding failure to accommodate

11

CPAP users and Smith's motion fails to show how Topic 7 related to those emails is relevant to his claim, his motion is denied as to Topic 7.

## CONCLUSION

For the foregoing reasons, Smith's Motion to Compel [72] is granted in part and denied in part.

**SO ORDERED.**

Dated: December 17, 2021

_____
Sunil R. Harjani
United States Magistrate Judge